CHARLES LEVISTONES *v.* CHARLES CLAIBORNE, Marshal, and another.

Where one against whom a *fi. fa.* has been issued, hands to the officer about to make a seizure, certain notes, circulating as currency, in the presence of a third person, who asserts that he is the owner of them, but does not insist on the officer's desisting from taking them away, he will forfeit any claim he may have to them.

APPEAL from the City Court of New Orleans, *Collens*, J. The petition alleges, that Claiborne, as Marshal of the City Court, had wrongfully seized, under a *fi. fa.* issued at the suit of his co-defendant Whiting, against one Gottschalk, five post notes of $100 each, issued by one of the municipalities of the city of New Orleans; that the notes are the property of the petitioner, who had, some months before the seizure, furnished Gottschalk with certain bank and municipality notes, and other money, to be employed by the latter on the petitioner's account and at his

risk, in the business of money brokerage ; that Gottschalk was allowed, as compensation for his services, half the profits, which were settled 'up daily ; and that all the notes, coin, or other money in Gottschalk's possession at the time of the seizure, belonged to the petitioner. It was further alleged that the Marshal, though requested so to do, refused to give back the notes so seized. An injunction was prayed for, and a judgment for the notes. The answer denied the allegations of the petition generally, and averred, that the notes were paid to the Marshal to satisfy a *fi. fa.* issued by Whiting against ·Gottschalk,. to whom the notes belonged.

*Ezekiel,* a clerk employed in the office kept by Gottschalk, testified that the latter kept an office " for account of the plaintiff ;" that the business carried on for Levistones is that of an exchange broker, and that Gottschalk is engaged in a stock and note business for himself; that the money in the office belongs to Levistones ; that he was in the office at the time of the seizure, and that the post notes taken by the Marshal belonged to Levistones ; that Gottschalk received a compensation for his services, settling with Levistones generally every week ; that he did not share with *Levistones* his profits as a broker, in stocks and notes ; that Gottschalk had no interest in the business ; that when the Marshal came into the office he attempted to seize the money on the counter ; that Gottschalk told him it did not belong to him, when he answered that he had orders to seize the money, and should do it ; that Gottschalk then asked the plaintiff if he should point out the money to be seized, and, on his consenting, Gottschalk pointed out the municipality post notes ; that plaintiff told the officer that the money belonged to him ; that the office furniture belonged to Levistones ; that he does not know who leased the office, but knows that Gottschalk pays the rent out of plaintiff's money. Gottschalk's name is on the door ; that all the money in the office on the day of the seizure belonged to Levistones ; and that the witness looks to him for his salary.

*Goodman* testified, that during the sickness of the first witness, he had discharged his duties as a clerk, and that from his knowledge of the books of the office, he is certain that the capital belonged to the plaintiff.

*Rochebrun* deposed, that he was present when the seizure was made ; that when the Marshal informed Gottschalk that he was about to seize, the latter answered that the contents of the office belonged to Levistones, who, at that time, entered the office ; that the Marshal having seized all the money, Gottschalk told him there was more than enough in the office to satisfy the claim ; and, after speaking with plaintiff, delivered to the officer a quantity of municipality post notes.

*Crozat,* the Deputy Marshal by whom the seizure was made, testified, that on entering the office and informing Gottschalk of his orders to seize, the latter told him that he had no property ; that on looking towards the bank notes on the counter, Gottschalk told him not to seize them, as they were not his ; that he then told Gottschalk that he had orders to seize, and should do so ; that Gottschalk then spoke a few words with plaintiff, and delivered to the witness the municipality post notes ; that plaintiff told witness that the money seized was his ; that Gottschalk whispered in plaintiff's ear both before and after the delivery of the money ; that he, (witness,) did not count the money in the office, but thinks there was between $5000 and $7000 in bank and municipality notes at their nominal value, besides the gold and silver on the counter ; that Levistones did not speak to witness before Gottschalk had delivered the money to him ; that, before the money was so delivered to him, Levistones spoke aloud, but witness did not listen to him ; and that Levistones appeared to be angry.

*Fellows,* a witness for the defendant, stated that Gottschalk's office was next door to his own ; that Gottschalk's name is on the door, and that the business of the office was done by him ; that in the beginning of the last summer, Gottschalk told him he was about to form a partnership ; that, sometime after, he told witness that he had formed a partnership with the plaintiff, who was to advance the capital, and he, Gottschalk, was to do the business ; that Gottschalk removed to the office in which the seizure was made, immediately after telling witness that he had formed a partnership with Levistones ; that it was not publicly known that Levistones had advanced the capital, and the communication to

witness was a confidential one ; that he has seen plaintiff in the office every day ; knows Gottschalk to be needy.

*Goodman,* in answer to a question by the court, stated, that the municipality, bank, and uncurrent notes, and specie in the office at the time of the seizure, were worth from $3500 to $4000.

On this evidence, there was a judgment in favor of the plaintiff, ordering the return of the notes, and the defendant Whiting has appealed.

*Eyma* and *C. Janin,* for the plaintiff.

*McHenry,* for the appellant.

MARTIN, J.   The defendant Claiborne, as Marshal of the City Court, having levied a *fi. fa.,* which had been issued on a judgment which his co-defendant Whiting had obtained against Gottschalk, on a number of municipality notes, claimed by the present plaintiff as his own, this suit was brought, and an injunction was obtained to stay the sale of the notes ; and the defendant Whiting is appellant from a judgment perpetuating the injunction, and decreeing that the notes be returned to the plaintiff.   The court, in our opinion, erred.   The testimony may, perhaps, show that the plaintiff was the owner of the notes ; but it is also established that they were handed over by Gottschalk, the defendant, in the *fi. fa.,* in the presence of the plaintiff and appellee, who, although he asserted his ownership of the notes, did not insist on the Marshal's desisting from taking and carrying them away. This circumstance divests him of any equity in opposing the sale ; especially as at the time when Gottschalk handed over the notes, there was a considerable sum of money on his counter in gold and silver, which the Marshal had declared, it was his intention to seize in satisfaction of the *fi. fa.*

It is therefore ordered and decreed, that the judgment be reversed, that the injunction be dissolved, and that the appellant Whiting recover from the appellee, damages at the rate of five per cent, on said Whiting's judgment against Gottschalk, with costs of suit in both courts.